01
02
03
04
05
06
07
08
09
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11  MATTHEW SILVA,                    )
                                      )
12          Plaintiff,                )     Case No. C05-471-RSM-JPD
                                      )
13      v.                            )
                                      )     REPORT AND RECOMMENDATION
14  JOSEPH WOODS,                     )
                                      )
15          Defendant.                )
    _____ )

16

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Matthew Silva is proceeding pro se and in forma pauperis in this 42 U.S.C. § 1983 civil rights action against defendant Joseph Woods, an officer with the Everett Police Department.  This matter comes before the Court upon defendant's motion for summary judgment.  Dkt. No. 55.  Plaintiff has not filed an opposition to the motion.  Having carefully considered defendant's motion, supporting materials, and balance of the record, I recommend that defendant's motion be GRANTED because defendant is entitled to qualified immunity.

## II.  FACTS AND PROCEDURAL HISTORY

During the early morning hours of March 22, 2002, defendant was on patrol in Everett, Washington, when he pulled behind a vehicle heading northbound on Lombard Avenue.  Dkt. No. 57 at ¶ 2 and Ex. 1.  At approximately 1:30 a.m., defendant used the

REPORT AND RECOMMENDATION
PAGE -1

01  computer in his patrol car to search the Washington State Department of Licensing ("DOL")

02  database for the vehicle's license plate number.[1]  *Id*.  The search revealed that the vehicle had

03  been reported sold in October 2001, but that the new owner had not yet registered the

04  certificate of ownership.  *Id*. at ¶¶ 3-4 and Ex. 1.  Because defendant knew that it is a

05  misdemeanor not to transfer a vehicle's certificate of ownership within forty-five days of sale,

06  he initiated a traffic stop.  *Id*. at ¶ 3 and Ex. 1; Rev. Code Wash. § 46.12.101(6).

07          After being pulled over, plaintiff told defendant that his name was "Mark Lewis" and

08  explained that he had purchased the vehicle a week earlier from a friend.  Dkt. No. 57 at Ex.

09  1.  Defendant ran the name "Mark Lewis" through the Washington Criminal Information

10  System database, but found no information.  *Id*.  He did, however, determine that "Mark

11  Lewis" was an alias used by plaintiff and that the personal information and physical

12  descriptions of "Mark Lewis" and plaintiff were nearly identical.[2]  *Id*.  Defendant also

13  discovered an outstanding felony warrant for plaintiff's arrest.[3]  *Id*. at ¶ 5 and Ex. 2.

14          After discovering the warrant, defendant performed a search incident to arrest in

15  which he discovered a small piece of plastic in plaintiff's pocket that contained what was later

16  verified to be cocaine.  Dkt. No. 57 at Ex. 1.  The search also revealed a second piece of

17  plastic near the front seat of plaintiff's car that contained cocaine.  *Id*.  Plaintiff was arrested,

18  read his *Miranda* rights, and charged in Snohomish County Superior Court with possession of

19

20

21

22          [1]The DOL did not retain a record of defendant's computer search, but defendant
"distinctly remember[s] running [the search.]"  Dkt. No. 57 at ¶4.

23          [2]Upon being confronted with this information, plaintiff admitted his true identity.  *Id*.
24  at ¶ 5 and Ex. 2

25          [3]On March 13, 2002, Snohomish County Superior Court Judge Linda C. Krese issued a
26  felony warrant for the arrest of plaintiff Matthew Silva.  Dkt. No. 57 at Ex. 2.  Plaintiff had
failed to appear on two charges of second degree possession of stolen property, one charge of
second degree theft, and two charges of forgery.  *Id*.

REPORT AND RECOMMENDATION
PAGE -2

01  a controlled substance.[4]  *Id*.  The charges were later dismissed.

02  On April 14, 20005, plaintiff filed this 42 U.S.C. § 1983 civil rights suit alleging that

03  defendant's search violated his Fourth Amendment Rights.  Dkt. No. 6.  He seeks

04  compensatory and punitive damages for the alleged violation.  Defendant has moved for

05  summary judgment. Dkt. No. 55.  Defendant argues that he is entitled to qualified immunity

06  because his search of defendant was consistent with the Fourth Amendment.[5]  Plaintiff has

07  filed no opposition to summary judgment.

## III.  QUALIFIED IMMUNITY STANDARD

09  Public officials who perform discretionary functions enjoy qualified immunity in a civil

10  action for damages, provided that his or her conduct "does not violate clearly established

11  federal statutory or constitutional rights of which a reasonable person would have known."

12  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity "provides ample

13  protection to all but the plainly incompetent or those who knowingly violate the law."  *Burns v.*

14  *Reed*, 500 U.S. 478, 480 (1991) (internal citations and quotations omitted).

15  In order to determine whether a defendant is entitled to qualified immunity, the Court

16  must conduct a two-step analysis.  First, it must determine whether the facts, when taken in

17  the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

18  constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mena v. City of Simi Valley*,

19  226 F.3d 1031, 1036 (9th Cir. 2000).  This first prong of the qualified immunity analysis

20  "mirrors the substantive summary judgment decision on the merits."  *Sorrels v. McKee*, 290

21  F.3d 965, 969 (9th Cir. 2002).

22

---

23
24  [4]Plaintiff later stated to defendant that he had attempted to sniff all of the drugs before
    his arrest, but that he was unable to do so. Dkt. No. 57 at Ex. 1.

25  [5]Out of an apparent abundance of caution, defendant also addresses plaintiff's potential
26  State law claims. Dkt. No. 55.  Plaintiff's complaint, however, states only a claim for relief
    under 42 U.S.C. §1983.  It makes no reference to the Washington Constitution, statutes, or
    cases.  The Court therefore declines to analyze potential State law claims.

01      If a violation is alleged, the Court must determine whether that constitutional right

02 was clearly established at the time of the alleged violation. *Saucier,* 533 U.S. at 201; *Mena*,

03 226 F.3d at 1036.  The second step requires the Court to determine "whether it would be clear

04 to a reasonable officer that his conduct was unlawful in the situation he confronted."

05 *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (internal citation and quotation

06 omitted).  The plaintiff bears the burden of showing that the right at issue was clearly

07 established.  *Sorrels*, 290 F.3d at 969.

08 IV.  ANALYSIS

09      The Fourth Amendment's prohibition against unreasonable searches and seizures

10 extends to "brief investigatory stops of persons and vehicles that fall short of traditional

11 arrest."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations omitted).  Before

12 a police officer can conduct such a stop, he must have a reasonable suspicion "that criminal

13 activity may be afoot."  *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  An officer can

14 form reasonable suspicion based on specific, articulable facts and reasonable inferences based

15 on his experience.  *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000)

16 (internal citations and quotations omitted).  A police officer who observes a traffic violation

17 has a reasonable suspicion to conduct a stop, regardless of his subjective intent.  *Whren v.*

18 *United States*, 517 U.S. 806, 810, 813 (1996); *United States v. Willis*, 431 F.3d 709, 715-16

19 (9th Cir. 2005).  Once an officer initiates a traffic stop, he may conduct a brief search of the

20 person and vehicle in order to ensure that the situation remains safe.  *Willis*, 431 F.3d at 717

21 (internal citations and quotations omitted).

22      Plaintiff has adduced few facts that suggest defendant violated his civil rights.  His

23 complaint alleges that defendant stopped him because he was "driving a piece-of-crap car in a

24 high-crime area in the middle of the night" and that the stop was therefore conducted "without

25 any lawful basis."  Dkt. No. 6.  If these were the only facts before the Court, the complaint

26 could state a violation of plaintiff's Fourth Amendment rights.

REPORT AND RECOMMENDATION
PAGE -4

01        Defendant, however, has submitted a declaration in support of summary judgment that

02    states he stopped plaintiff because of a suspected violation of a state traffic law.  Defendant's

03    declaration and the relevant police report state that he conducted a DOL search that revealed

04    plaintiff had failed to timely transfer his vehicle's certificate of ownership.  This information

05    provided defendant with the reasonable suspicion necessary to initiate a lawful traffic stop.

06    *Whren,* 517 U.S. at 810; *Willis*, 431 F.3d at 715-16.  Hence, when viewing all of the available

07    facts in a light most favorable to plaintiff, he does not state a violation of his Fourth

08    Amendment rights.

09        Even if the Court were to conclude that plaintiff has adequately alleged that the traffic

10    stop violated his Fourth Amendment rights, defendant's actions cannot be considered

11    unreasonable in light of clearly established law.  To the contrary, Section 46.12.101(6)(e) of

12    the Revised Code of Washington makes it a misdemeanor for a vehicle owner to fail to

13    transfer a vehicle's certificate of ownership within forty-five days of the vehicle's sale.  In

14    light of this statute, and *Whren*, *Lopez-Soto*, and *Willis*, *supra*, it was reasonable for defendant

15    to believe that plaintiff had violated the law and that he had the reasonable suspicion

16    necessary to initiate the traffic stop.

17        The Washington Supreme Court held in 2004 that a suspected violation of Section

18    46.12.101 is not an "ongoing offense" sufficient to support a traffic stop.  *State v. Green*, 150

19    Wn.2d 740, 82 P.3d 239 (2004) (per curiam).  However, the events at issue here occurred

20    approximately two years before that decision.  The date for determining whether the

21    defendant's actions were reasonable in light of clearly established law is the date of the

22    incident at issue.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (noting that the

23    reasonableness of a defendant's conduct must be "judged against the backdrop of the law at

24    the time of the conduct").

25        Moreover, the outstanding felony warrant provided an adequate basis for defendant's

26    search and ultimate arrest of plaintiff.  Plaintiff does not dispute that the warrant used here

REPORT AND RECOMMENDATION
PAGE -5

was a valid basis for his arrest.  Police officers may search an arrestee's person and the passenger compartment of their vehicle pursuant to a lawful arrest.  *New York v. Belton*, 453 U.S. 454, 460 (1981).  The drugs found pursuant to the searches were in plaintiff's pocket and near the driver's seat, respectively.  Dkt. No. 57 at Ex. 1.  These searches were not overly intrusive.  Hence, the limited searches incident to arrest conducted by defendant were reasonable given the circumstances.

## V.  CONCLUSION

For the reasons set forth above, I recommend that defendant's motion for summary judgment be GRANTED and that this case be dismissed with prejudice.  A proposed order accompanies this report and recommendation.

DATED this 21st day of August, 2006.

James P. Donohue
—————————————————
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -6